NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FREDERICK J. NELSON, PETITIONER, v. SAMUEL B. TIL-
LOU AND DANIEL W. TILLOU, EXECUTORS OF THE
ESTATE OF ABIJAH F. TILLOU, RESPONDENTS.

Decided August 5, 1938.

For the petitioner, *Joseph Brody* (*David Roskein,* of counsel).

For the respondent, *Frank W. Long.*

\*    \*    \*    \*    \*    \*    \*

From the testimony adduced, I find that the petitioner was an employe of the respondents, Samuel B. Tillou and Daniel W. Tillou, executors of the estate of Abijah F. Tillou, being employed by them as a carpenter in the repair of properties owned by the said estate or acquired by it through purchase and foreclosure. The executors were engaged in the management, operation and maintnance of the said real estate.

I further find that the petitioner received a daily wage of $6 and under the act, is entitled to the compensation rate of $20 per week.

On the day in question, April 24th, 1935, the petitioner was engaged in repair work on property owned by the respondents, at No. 102 Ridgewood Road, South Orange, New Jersey; he was preparing a scaffold or rigging in order to insert certain clapboards preparatory to the painters coming on the job. While so doing, he fell from either the scaffold

or the ladder close by, a distance of about six feet to the ground, striking his shoulders, head and body. This accident obviously arose out of and in the course of petitioner's employment with the respondent. The respondent also had actual knowledge of this occurrence. Petitioner got up of his own accord and was considerably dazed. He was immediately taken to the office of Dr. John G. Merselis by Ralph Tillou. The petitioner's complaints of pain were referable to the back of his neck, head and shoulder. He thereafter was treated by Dr. Merselis who administered medication and physiotherapy. Dr. Marselis arranged to have X-rays taken at the Orange Memorial Hospital under the supervision of Dr. George Reitter, on May 11th, 1935.

The testimony discloses that prior to the said accident, the petitioner was, to all outward appearances, in apparent normal, good health. He was a robust and hard working man. This testimony was substantiated by a number of lay witnesses who appeared on his behalf. The testimony further discloses that since the said accident, the petitioner walks with a guarded and slow gait, holding his neck in an abnormal position. He appears to be a semi-invalid, with pain and associated symptoms referable to the region of his neck. The testimony further discloses that there appears a stiffness in the neck muscles and a loss of mobility of the neck. This, the petitioner ascribes to his accident.

There appeared to be a sharp conflict in the medical viewpoint between the several physicians representing the respective parties with respect to the nature and extent of disability.

I have carefully reviewed the testimony of the various physicians adduced on behalf of the parties and find as a fact that the X-rays taken indicate that prior to the said accident, petitioner had an osteo-arthritis and a beginning Paget's disease. Paget's disease is a condition of slow progress, but due to the slowness of the normal progress of the condition, was and is not causing the disability from which the petitioner is suffering. I feel that as a result of the said accident, the petitioner sustained a separation of the arthritic bone formation in the cervical spine, causing the same to break away and become separated, sustaining what is com-

monly known as a sprain fracture. In reality, it is a separation of the bony structure previously weakened by osteoarthritis. Accompanying the separation was also a definite soft tissue injury, which superimposed upon the underlying bony structure, is producing his present incapacity. I find as a matter of fact that the petitioner's Paget's disease has not been aggravated by the trauma. I further find that the trauma produced a disability from which the petitioner is now suffering to the soft tissue, and bony damage in the cervical region. It is here where the petitioner has his greatest complaints. This was the area traumatized and to which Dr. Merselis and Dr. Sherman rendered their treatment. Here the objective evidences of his disability are most marked. Such a disability superimposed upon a structural weakness is compensable. There is no doubt that such a disability exists.

I have had an opportunity to observe the petitioner on the stand and in court during the many days of trial. From my personal observations and from the testimony of the physicians, I find that the petitioner has a marked abnormality in the region of his neck manifest by the position in which he holds the same and by objective evidences in the musculature thereof. This is borne out by the testimony of the physicians who testified on his behalf, who went into considerable detail in describing the condition presented.

After carefully considering all the testimony adduced by the various witnesses, I am of the opinion that the petitioner did, on April 24th, 1935, while in and about his employment, suffer an accidental injury as he described. The work in which the petitioner was engaged at the time was in the usual course of his duties as a carpenter. The evidence clearly indicates that prior to the said accident, the petitioner had an underlying condition of osteo-arthritis which was not disabling and produced no symptoms discernible to the petitioner. The evidence further indicates that the fall sustained by the petitioner caused a separation of small bony fragments in the region of the fifth and sixth cervical vertebrae present as a result of the said pre-existing osteo-arthritis. This was accompanied by soft tissue damage to the muscula-

ture thereof, producing the symptoms which the petitioner complained of. These were corroborated by the objective evidences of injury and disability discernible by several physicians who treated and examined the petitioner. The underlying physical structure gave way under the stress of the said fall. It is my opinion that the said trauma, superimposed upon the underlying osteo-arthritis, produced the disability in the region of the neck from which the petitioner is now suffering. For the said disability compensation is recoverable under our act. Mr. Justice Heher very clearly expressed the thoughts governing my findings when he stated in the case of *John Prino* v. *Austin Co.,* 120 *N. J. L.* 19; 197 *Atl. Rep.* 731, the following:

"The criteria of a compensible accidental injury are: First, was the employment one of the contributing causes without which the accident would not have happened; and, second, was the accident one of the contributing causes without which the injury would not have been sustained. In appraising the evidence, probability and not certainty is the touchstone."

The disability from which the petitioner is now suffering referable to his neck, was brought on by reason of the accident sustained by him. The symptoms referable thereto are marked and are disabling and interfere with the petitioner's ability to maintain his head in a normal position, and interfere with his ability to work, not only as a carpenter, but in a limited way in his other endeavors.

I find that the disability produced by the said accident disables the petitioner to the extent of twenty per cent. of partial permanent total disability.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

I further find that the petitioner shall be entitled to receive compensation for temporary disability from April 24th, 1935, to July 17th, 1935, a period of twelve weeks.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN J. STAHL,
*Deputy Commissioner.*